UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JOSEPH CONRAD SMITH, II,<br><br>    Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, NA, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,<br><br>    Defendants. | Case No. 14-cv-11458<br>Honorable Laurie J. Michelson<br>Magistrate Judge Michael J. Hluchaniuk |

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [12]**

In 2008, Plaintiff Joseph Conrad Smith, II, moved his family out of their home after he fell behind in mortgage payments and Defendants foreclosed the property. Then a Michigan Court of Appeals ruling in 2011 suggested the foreclosure was invalid. Although the ruling was reversed later that year by the Michigan Supreme Court, Defendants had expunged the foreclosure in the meantime. They recorded the expungement, but no one drew it to Smith's attention. He was therefore surprised and confused when in 2012 he started receiving default notices for a mortgage he thought had already been foreclosed. Smith responded by filing this lawsuit. Defendants' Motion to Dismiss the First Amended Complaint (Dkt. 12) is now before the Court. For the reasons that follow, the Court finds that Smith has not stated a claim for fraud, fraud in the inducement, violation of the Michigan Consumer Protection Act, unjust enrichment, or quiet enjoyment. Defendants' Motion to Dismiss the First Amended Complaint (Dkt. 12) is therefore GRANTED.

## I. LEGAL STANDARD

The Federal Rules of Civil Procedure require that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff "must allege 'enough facts to state a claim of relief that is plausible on its face.'" *Traverse Bay Area Int. Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility means that "the complaint has to 'plead[] factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged.'" *Ohio Police & Fire Pension Fund v. Std. & Poor's Fin. Servs., LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "This standard does not require detailed factual allegations, but a complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012) (citation and internal quotation marks omitted).

The court must "accept all well-pleaded factual allegations as true and construe the complaint in the light most favorable to plaintiffs." *Bennet v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010). The court "need not, however, accept unwarranted factual inferences." *Id.* (citing *Twombly*, 550 U.S. at 570). Nor are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" entitled to an assumption of truth. *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In general, "a district court may not consider matters beyond the complaint" when analyzing a motion to dismiss. *Winget v. Morgan Chase Bank, N.A.*, 537 F.3d 565, 575 (6th Cir.

2008). But the court may examine "orders, items appearing in the case record, exhibits attached to the complaint, and documents referred to in the complaint and central to the plaintiff's claim." *Johnson v. Trott & Trott, P.C.*, 829 F. Supp. 2d 564, 568 (W.D. Mich. 2011). Further, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Weiner v. Klais & Co.*, 108 F.3d 86 (6th Cir. 1997). Finally, the court may consider materials that are "public records or are otherwise appropriate for the taking of judicial notice." *New Eng. Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).

## II. ALLEGATIONS OF THE COMPLAINT

Smith purchased a home at 2400 Edison, Detroit, (the "Property") in February 2000. (Dkt. 10, Am. Compl. ¶ 11; *see* Dkt. 10-2, Am. Compl. Ex. 1, Warranty Deed.) The deed was recorded. (Am. Compl. ¶ 12; *see* Warranty Deed.) In April 2002, Smith mortgaged the Property to Countrywide Home Loans, Inc., for $150,015.00. (*Id.* ¶ 15; *see* Am. Compl. Ex. 2, Mortgage; Dkt. 12-2, Mot. Ex. 1, Note.) The mortgage was recorded. (*Id.*)

Smith fell behind on his mortgage payments. (*See* Am. Compl. ¶ 18.) In June 2008, counsel for Defendant Mortgage Electronic Registration Systems, Inc., ("MERS") as nominee for the lender, published a notice of foreclosure in the Detroit Legal News and posted it on the Property. (Am. Compl. ¶ 19; *see* Dkt. 10-4, Am. Compl. Ex. 3, Foreclosure Notice.) In July 2008, MERS, again as nominee for the lender, purchased the Property at a sheriff's sale. (*See* Am. Compl. ¶ 20; Dkt. 10-5, Am. Compl. Ex. 4, Sheriff's Deed on Mortgage Sale.) The deed was recorded. (*Id.*) MERS quitclaimed the Property to Fannie Mae. (*See* Am. Compl. ¶ 21; Dkt. 10-6, Am. Compl. Ex. 5, MERS Quit Claim Deed.) The deed was recorded in August 2008. (*Id.*)

Smith made many repairs and upgrades to the Property while he lived there. (Am. Compl. ¶¶ 13–14, 23.) Smith and his family moved out of the Property between July 29, 2008, when the Sherriff's Deed on Mortgage Sale was recorded, and August 7, 2008, when the Property was quitclaimed to Fannie Mae. (*See* Am. Compl. ¶ 24.) The foreclosure and sale "caused Plaintiff to discontinue his pursuit of obtaining the funds to redeem the property prior to the Redemption period expiration, and refocus on finding immediate and adequate housing to accommodate a family of 6." (Am. Compl. ¶ 27.) After Plaintiff moved out, the Property was vandalized by removal of plumbing, wiring, and other items. (*See* Am. Compl. ¶¶ 29–30, 49; Dkt. 10-13, Am. Compl. Ex. 13, Review Notice and Request at Pg ID 251.)

In November 2008, Fannie Mae quitclaimed the Property to Countrywide, which transferred the Property to the Secretary of Housing and Urban Development ("HUD") by warranty deed in February 2009. (Am. Compl. ¶¶ 31–32; *see* Dkt. 12-6, Mot. Ex. 5, Fannie Mae Quit Claim Deed; Dkt. 10-7, Am. Compl. Ex. 6, Countrywide Warranty Deed.) Both deeds were recorded. (*Id.*)

Then in April 2011, the Michigan Court of Appeals ruled in *Residential Funding Company v. Saurman* that MERS could not foreclose by advertisement as authorized by Michigan Compiled Laws 600.3204(1)(d) because MERS was not "the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage" within the meaning of the statute. 807 N.W.2d 412, 416 (Mich. Ct. App. 2011). The Michigan Supreme Court later reversed the ruling, in November 2011. *Residential Funding Co. v. Saurman*, 805 N.W.2d 183, 184 (Mich. 2011). But in the meantime, in August 2011, counsel for MERS recorded an affidavit expunging the Sheriff's Deed on Mortgage Sale for the Property. (Am. Compl. ¶ 37; *see* Dkt. 12-8, Mot. Ex. 7, Affidivit Expunging Sheriff's Deed.)

4

In October 2011, HUD quitclaimed the Property to Defendant Bank of America, N.A., ("BANA") which had acquired Countrywide—the original mortgagee—in 2008. (Am. Compl. ¶ 40; *see* Dkt. 10-9, Am. Compl. Ex. 9, HUD Quit Claim Deed.) The deed was recorded. (*See* HUD Quit Claim Deed.) In January 2012, MERS assigned the Mortgage to BANA and recorded the assignment. (*See* Dkt. 12-10, Mot. Ex. 9, MERS Assignment.)

Smith was not notified that the 2008 foreclosure had been expunged. (*See* Review Notice and Request at Pg ID 251; Am. Compl. ¶¶ 34, 41–42, 45–46, 50(3).) On February 6, 2012, Smith received a letter from counsel for BANA. (Am. Compl. ¶ 43; *see* Dkt. 10-10, Am. Compl. Ex. 10, Feb. 2012 Letter.) The letter stated that the mortgage loan for the Property was in default for non-payment, with the total amount then due $202,992.72. (*Id.*) The letter further stated that if a meeting to discuss modification was requested within 30 days, foreclosure proceedings would not be commenced for at least 90 days from the date of the letter. (*See* Feb. 2012 Letter.)

On March 6, 2012, BANA counsel wrote Smith another letter acknowledging his request for a meeting to discuss loan modification or loss mitigation options and requesting financial information and other documents by April 6, 2012, to avoid foreclosure. (Am. Compl. ¶ 44; see Dkt. 10-11, Am. Compl. Ex. 11, March 2012 Letter.) Smith returned the requested documents "forthwith." (Am. Compl. ¶ 45.) But Smith was confused about why he was receiving communications as if he were still the owner of the Property, and tried to contact BANA counsel to learn more. (*Id.* ¶¶ 45–46.)

In a letter dated April 13, 2012, counsel for BANA stated, "notice is hereby given that said mortgage will be foreclosed by a sale of the mortgaged premises . . . on May 17, 2012." (Dkt. 10-12, Am. Compl. Ex. 12, April 2012 Letter; *see* Am. Compl. ¶ 47.) The letter stated that the amount due on the mortgage was $417,162.80. (*Id.*)

Around the same time, Smith received a notice that he could be eligible for an Independent Foreclosure Review required by federal bank regulators because the Property "was active in the foreclosure process between January 1, 2009 and December 31, 2010." (*See* Am. Compl. ¶ 48; Review Notice and Request at Pg ID 248–49.) Smith submitted a request for review. (*Id.*)

Defendants reinstated Smith's original loan without notifying him and reported to creditors as if he had never lost possession of the Property between 2008 and 2011. (Am. Compl. ¶ 50(3). Current billing shows that Smith owes a principal balance of $155,000.00 and an overdue balance of $144,045.75. (*Id.* ¶ 50 (7).) During the three-year period when the home was deemed foreclosed, it was left unsecured. (*Id.* ¶ 50(6).) As a result, Smith has had to incur labor, construction, and repair without the assistance of homeowner's insurance to attempt to restore his home. (*See id.*) Smith also incurred costs to relocate his family and pay for an alternate residence. (*See id.* ¶ 50(2).)

Smith filed this lawsuit on April 10, 2014. (*See* Dkt. 1.)

### III. ANALYSIS

The current complaint (amended in June after Defendants' Motion to Dismiss was filed) contains three counts: (1) fraud and fraud in the inducement and Consumer Protection Act; (2) unjust enrichment; and (3) denial of quiet and peaceful enjoyment. (Am. Compl. ¶¶ 51–84.) Smith asks the Court to award damages "in an amount greater than $100,000" as well as expenses, attorney fees, and punitive damages; deny Defendants "any entitlement to alter or make declaratory relief applicable in any actions pertaining to the subject property"; and "remove any debt associated with the terms of any mortgage previously held or entered into by

6

Plaintiff and award Plaintiff full ownership of the subject property." (Am. Compl. at Pg ID 210.) The Court examines each ground for relief and finds that Smith has not stated a claim.

### A. Fraud and Fraud in the Inducement

To state a claim for fraud under Michigan law, the following elements must be alleged: "(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. *M&D, Inc. v. W.B. McConkey*, 585 N.W.2d 33, 36 (Mich. Ct. App. 1998) (citing *Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 815 (1976)). Michigan also recognizes fraud in the inducement, which has the same elements and "occurs where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon." *Custom Data Solutions, Inc. v. Preferred Capital, Inc.*, 733 N.W.2d 102, 104–05 (Mich. Ct. App. 2006).

The federal rules require a heightened pleading standard for fraud: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Sixth Circuit has held "[t]his rule requires a plaintiff: (1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012).

In response to Defendants' contention that Smith has failed to satisfy this heightened pleading requirement, Smith points out that his Amended Complaint alleges "Defendant and or

its representatives intentionally misrepresented, published, filed and or foreclosed on the subject property on or about June 2008 with fraudulent intent," and "Defendant intentionally provided Plaintiff with knowingly false information in order to obtain possession of Plaintiff primary home and cause him to move from his primary residence of 10-years into different living quarters along with his family." (Dkt. 15, Resp. at Pg ID 375 (quoting Am. Compl. ¶¶ 52–53).)

Smith's failure to identify even which Defendant is meant obviously does not comport with Rule 9. Nor does he identify specific statements, speakers, and dates. And even assuming that the foreclosure documents attached to the Amended Complaint provide this required information, Smith does not explain what made the statements fraudulent. MERS foreclosed Smith's property by advertisement in 2008. There is no indication that MERS or BANA knew or should have known in 2008 that such foreclosures might not be valid. And the Michigan Supreme Court has now held that MERS *is* authorized to foreclose by advertisement under Michigan law. *Saurman*, 807 N.W.2d 412. To state a claim for fraud under Michigan law, the Plaintiff must plausibly allege "when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion." *M&D, Inc.*, 585 N.W.2d at 36. Smith has not plausibly alleged that MERS or BANA knew in 2008 that the Michigan Court of Appeals would find that MERS could not foreclose by advertisement, or were reckless in that regard. *See Jones v. Colonial Sav. F.A.*, No. 13-CV-12092, 2013 WL 6473708, at *13 (E.D. Mich. Dec. 10, 2013) (adopting the magistrate judge's recommendation to dismiss claim that foreclosure by MERS in 2010 was fraud because "Plaintiffs have not averred that Defendants knew their exercise of ownership was false unless and until the Michigan Court of Appeals said so in April 2011"). Smith has not stated a claim for fraud or fraud in the inducement.

### B. Michigan Consumer Protection Act

Defendants argue that Smith's allegation that they violated the Michigan Consumer Protection Act ("MCPA") does not state a claim because the MCPA does not apply to mortgage transactions. (Mot. at 12–13.) Smith does not address this argument. The Court agrees that the MCPA does not apply to Defendants' actions as alleged in the Amended Complaint. *See* Mich. Comp. Laws Ann. § 445.904(a) ("This act does not apply to . . . A transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States."); *Meyer v. Citimortgage, Inc.*, No. 11-13432, 2012 WL 511995, at *10 (E.D. Mich. Feb. 16, 2012) ("This claim must be dismissed because the MCPA does not apply to mortgage transactions."); *Newton v. West*, 686 N.W.2d 491, 494 (Mich. Ct. App. 2004) (holding that banks making residential mortgage loans are engaged in transactions specifically authorized by state and federal statutes and are therefore exempt under § 445.904(a)). Smith has not stated a claim for violation of the MCPA.

### C. Unjust Enrichment

Defendants argue that Smith cannot state a claim for unjust enrichment. (Mot. at 13–14.) Smith argues that Defendants "have continued to bill Plaintiff as if he never lost ownership of his subject property," "while knowing that the subject property has a diminished value associated with its ownership," and that "Defendants have been Unjustly Enriched and specifically by the funds expended, time and effort, labor and repairs made to the subject property." (Resp. at Pg ID 376–77 (quoting Am. Compl. ¶¶ 75–79).) Michigan law will imply a contract to prevent unjust enrichment if the plaintiff establishes "(1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Belle Isle Grill Corp. v. City of Detroit*, 666 N.W.2d 271, 280 (Mich. Ct. App. 2003). But "a

9

contract will be implied only if there is no express contract covering the same subject matter." *Id.* Smith's mortgage states: "Borrower understands and agrees that . . . if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successor's and assigns), has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property." (Mortgage at Pg ID 216 or 290.) Because the parties' contract covers the subject matter of Smith's allegations, Smith cannot state a claim for unjust enrichment. *See Collins v. Wickersham*, 862 F. Supp. 2d 649, 658 (E.D. Mich. 2012) ("Plaintiffs' mortgage granted the mortgagee a power of sale, expressly permitting foreclosure by advertisement.").

**D. Quiet Enjoyment**

Defendants argue that Smith cannot state a claim for quiet enjoyment because such claims are limited to landlord-tenant relationships. (Mot. at 14.) Smith responds that this argument "should be denied, due to the manner in which this progressed through the various courts and thereafter the removal (to federal court) does not negate the claim that could have been asserted at the lower courts but contained herein." (Resp. at Pg ID 377.) But Smith has not identified any authority that recognizes a claim under Michigan law for breach of an implied covenant of quiet enjoyment in the mortgage context. Michigan courts hold that "the covenant of quiet enjoyment is breached only 'when the landlord obstructs, interferes with, or takes away from the tenant in a substantial degree the beneficial use of the leasehold.'" *Slatterly v. Madiol*, 668 N.W.2d 154, 164 (Mich. Ct. App. 2003). Because Smith has not alleged a landlord-tenant relationship, therefore, he has not stated a claim for quiet enjoyment. *See Ghiaciuc v. Bank of Am., N.A.*, No. 11-CV-13274, 2012 WL 4178699, at *4 (E.D. Mich. Sept. 18, 2012) ("Without establishing the predicate landlord-tenant relationship, which Plaintiff cannot do, there can be no breach of the covenant of quiet enjoyment."); *D&T Constr. Co. v. McVickers Shelby, L.L.C.*, No.

06-10533, 2006 WL 3447083, at *4 (E.D. Mich. Nov. 28, 2006) ("All the cases and secondary authority the Court has found illustrates one point: a claim that an express or implied covenant for quiet enjoyment was breached is premised upon contract law in the landlord-tenant relationship.").

### E.  Unclean Hands

Defendants further argue that Smith's request for declaratory relief is barred by the unclean hands doctrine because he has not made a payment since October 2007. (Mot. at 15.) Smith responds that "if Defendants were 'clean in their dealings' the need for judicial interference would not have been prevalent, numerous confusing filing, Motions Setting Aside filings, lawsuits and settlements by Defendants as it relates to these same type of actions, would not be present and in the legal and historical records today." (Resp. at Pg ID 379.) Smith's case is unusual. It is not clear what his contractual obligations are at this point, years after he moved out of the Property because he believed it had been foreclosed. Regardless, Smith has failed to state a claim for relief and therefore the Court need not decide whether his hands are unclean.

## IV. CONCLUSION AND ORDER

Smith has not stated a claim for fraud, fraud in the inducement, violation of the Michigan Consumer Protection Act, unjust enrichment, or quiet enjoyment. Defendants' Motion to Dismiss the First Amended Complaint (Dkt. 12) is GRANTED. The Court previously allowed Smith to amend his complaint in response to an earlier motion to dismiss for failure to state a claim. (Dkt. 6.) Smith now having failed to state a claim on his second attempt, the Court does not expect that further amendment will be sought. The case will be closed and a separate judgment entered.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated:  January 23, 2015

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 23, 2015.

                                              s/Jane Johnson
                                              Case Manager to
                                              Honorable Laurie J. Michelson